UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PATRICK F.,
      Plaintiff,

v.                                           C.A. No. 22-212MSM

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
      Defendant.

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On January 9, 2020, Plaintiff Patrick F., a "younger" individual with a high school diploma and work history as a truck driver (with a CDL license), packager and cashier, applied for the sixth time for disability benefits. The current application, seeking Supplemental Security Income ("SSI"), alleges onset as of January 24, 2019, the day following the last denial. Tr. 76, 176-77. It claims that Plaintiff has been disabled during the period in issue[1] by mental (post-traumatic stress disorder ("PTSD"), depression and anxiety) and physical (fibromyalgia) impairments.[2] Tr. 218. Plaintiff claims that he has not worked since 2017. Tr. 40.

Before the Court is Plaintiff's motion for reversal of the decision of the Acting Commissioner of Social Security ("Commissioner") denying his SSI application. ECF No. 11. Plaintiff contends that the Administrative Law Judge ("ALJ") erred (1) at Step Four in finding that Plaintiff could perform past relevant work as a truck driver despite the testimony of the

---

[1] For an SSI claim, the period in issue runs from the date of application (January 9, 2020) to the date of the ALJ's decision (March 2, 2021).

[2] During the administrative processing of Plaintiff's application, other impairments were suggested and considered, including obesity, asthma, lumbar spine disorder and hypertension. Tr. 17. These are not in issue in this case and will not be discussed further.

vocational expert ("VE") that such work was precluded by the RFC[3] in the ALJ's pertinent hypothetical; and (2) at Step Two and in determining Plaintiff's RFC by failing properly to analyze his subjective symptoms of pain that he alleges were caused by the impairment of fibromyalgia, as well as other unspecified subjective symptoms. Id. at 7-15. Defendant Kilolo Kijakazi ("Commissioner") has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 12. She acknowledges the ALJ's Step Four error but argues that the error is harmless because the ALJ also made the alternative Step Five finding that there are at least four jobs with significant numbers in the national economy that Plaintiff can perform. Id. at 3-4. She also argues that the ALJ's findings regarding Plaintiff's subjective statements were made in compliance with applicable law and are well supported by substantial evidence. Id. at 5-10.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I. **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam). Once the Court concludes that the decision is supported by substantial evidence and that the

---

[3] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez, 647 F.2d at 222).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 416.905(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 416.905-911.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 416.920(d). Fourth, if a claimant's impairments do not prevent

3

doing past relevant work, the claimant is not disabled. Id. § 416.920(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 416.920(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to SSI claims).

### B. Subjective Statements Regarding Pain and Fibromyalgia

The ALJ must consider a claimant's subjective statements about pain and determine the extent to which they are reasonably consistent with the objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017); 20 C.F.R. § 416.929(c)(3). SSR 16-3p directs the ALJ to consider the entire case record, including not only the objective medical evidence, but also the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018). In this Circuit, the SSR 16-3p requirements are also reflected in Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986), which requires examination of considerations capable of substantiating subjective complaints of pain including: (1) daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; (5) treatment, other than medication, received for relief of pain; (6) any other measures used to relieve pain or other symptoms; and (7) any other factors

relating to the claimant's functional limitations and restrictions attributable to pain. Cookson v. Colvin, 111 F. Supp. 3d 142, 154 (D.R.I. 2015).

Although an individual's subjective statements as to pain are not conclusive of disability, 42 U.S.C. § 423(d)(5)(A), hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings." Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021) (internal quotation marks omitted). An ALJ's "extreme insistence on objective medical findings to corroborate subjective testimony of limitations of function because of pain" is error. Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *3 (D.R.I. Aug. 1, 2022) (quoting Dianne D. v. Berryhill, C.A. No. 18-312JJM, 2019 WL 2521840, at *7 (D.R.I. June 19, 2019), adopted by text order (D.R.I. July 5, 2019)), adopted by text order (D.R.I. Nov. 7, 2022). Nevertheless, a reviewing court will not disturb a clearly articulated finding discounting such statements as long as it is based on substantial supporting evidence in the record. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). On the other hand, if there is no evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441.

When the subjective pain is caused by alleged fibromyalgia, the pain assessment can be of pivotal importance because fibromyalgia limitations are "of necessity based on the claimant's subjective allegations as the doctor's examinations of the claimant were, with the exception of the presence of tender points, relatively benign." Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009) (internal quotation marks omitted); see Tegan S., 546 F. Supp. 3d at 169-70 ("credibility determination is critical when the claim of disability is based on fibromyalgia") (internal quotation marks omitted), adopted by text order (D.R.I. Sept. 9, 2016)). It would be error for an

ALJ to "basically rel[y] on the lack of objective findings to substantiate [a claimant's] condition, [when] such a lack is what can be expected in fibromyalgia cases." Johnson, 597 F.3d at 412-13. To provide guidance to adjudicators facing disability claims based on fibromyalgia, the Commissioner issued SSR 12-2p, 2012 WL 3104869 (July 25, 2012). SSR 12-2p sets out fibromyalgia's diagnostic criteria and emphasizes that subjective pain and fatigue can be disabling. Tegan S., 546 F. Supp. 3d at 170.

### C. Harmless Error

"[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Rivera v. Comm'r of Soc. Sec. Admin., No. 12–1479, 2013 WL 4736396, at *11 (D.P.R. Sept. 3. 2013) (quoting Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012)). If the likely outcome on remand is clear and the same as that reached by the ALJ, the error is harmless and the court may uphold the denial of benefits. Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D. Me. June 2, 1999). Error is not harmless "[w]hen an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its actions." Lyons ex rel. X.M.K.L. v. Astrue, Civil Action No. 12–30013, 2012 WL 5899326, at *7 (D. Mass. Nov. 26, 2012) (quoting Seavey v. Barnhart, 276 F .3d 1, 12 (1st Cir. 2001)).

### III. Analysis

#### A. Fibromyalgia and Plaintiff's Subjective Statements Regarding Pain

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective complaints of pain caused by fibromyalgia and of other (unspecified) mental limitations because the decision overly relies on objective evidence. ECF No. 11 at 10-15. I begin the analysis by sketching in the pertinent background.

##### 1. Background Regarding Subjective Statements

In 2018, during a period that is relevant to a prior disability application and well before the alleged onset date in this case, Plaintiff went to the emergency room complaining of sudden severe back pain. Tr. 302. On examination, he was found to have normal range of motion and he was sent home with a diagnosis of muscle strain caused by using his back scratcher. Tr. 303-04. Later in 2018, Plaintiff complained to a treating physician at Thundermist of pain over his entire body, tremors, "massive headaches" and frequent falls ongoing for a year. Tr. 344-57. Diagnoses such as epilepsy and multiple sclerosis were explored; an MRI and an EEG were ordered but both were normal and no diagnosis was made. Tr. 345, 352, 354-57; see Tr. 347 ("It is difficult to determine the exact etiology of this presentation."). Except for "flat affect," Plaintiff's mental status examinations ("MSE") were normal.[4] Tr. 346, 351, 356. There is no reference to fibromyalgia or chronic pain being considered in any of these records.

After a gap in the medical treating record, Plaintiff returned to Thundermist in April 2019 complaining of joint pain and sleep problems. Tr. 361. His treating physician, Dr. Jessica Johnson, performed an examination, made normal findings, including a normal MSE, noted his report of "walking a lot recently" with some ankle and knee pain and recommended stretching, ice and "NSAIDs." Tr. 362-63. On October 2, 2019, Plaintiff returned to Thundermist complaining of leg and back pain and headaches and advised Dr. Johnson he was "[w]orried about fibromyalgia" and "[h]as done some reading on [it] and symptoms seem to fit." Tr. 358-59. Although she noted no diagnosis, Dr. Johnson put Plaintiff on a "[t]rial [of] gabapentin, noting that it "[m]ight also help with sleep," and "[d]iscussed referral to [a] chiropractor, [with]

---

[4] A mental status examination or "MSE" is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 31, 2022); Lilibeth G. v. Kijakazi, C.A. No. 20-474WES, 2021 WL 5049377, at *1 n.4 (D.R.I. Nov. 1, 2021), adopted, 2021 WL 5631745 (D.R.I. Dec. 1, 2021).

acupuncture information given." Tr. 359.  Plaintiff's next appointment with Dr. Johnson was six months later, on April 1, 2020, when he reported he had not followed up with a chiropractor but was taking gabapentin, which helped with sleep and with pain "a little bit." Tr. 612.  Based on her examination and Plaintiff's subjective reports, Dr. Johnson listed "chronic pain" as a diagnosis, continued gabapentin and renewed her suggestion of chiropractic treatment. Tr. 612-13.  At Plaintiff's last appointment of record with Dr. Johnson, a phone contact on October 27, 2020, Plaintiff complained of his sleep ("so-so") and tension headache, for which Dr. Johnson prescribed Excedrin.  Tr. 642-44.  There is no mention of complaints or treatment for any other pain. See id.  Plaintiff never told Dr. Johnson or other Thundermist treating professional that he had difficulty getting out of bed, walking, sitting and standing or leaving the home alone.

      Also during 2018 through 2020, Plaintiff received mental health treatment (medication and therapy) at Community Care Alliance.  Prior to the period in issue, in early 2018, Plaintiff's MSE was abnormal with observations of anxiety, depression, constricted affect and abnormalities of thought.  Tr. 402.  However, after several months of treatment, by August 2018, Plaintiff's MSEs were largely normal and he reported he was "exercising more, walking." Tr. 474-75.  Past Plaintiff's alleged onset date, well into 2019, the therapy records are largely normal, with only occasional complaints of, for example, "back issues" and pain in heels in February 2019, but also (in April) reports of regularly helping his cousin with her five children. See Tr. 535-37, 544.  In August 2019, Plaintiff told his therapist that he "is also experiencing medical issues and is questioning fibromyalgia," Tr. 562, but by September 2019, his therapist noted, "in better spirits and seems to be doing well." Tr. 565.  In January 2020 (the same month he applied again for disability benefits), he told his therapist (inaccurately) that he had been "diagnosed with fibromyalgia," as well as that (accurately) he "has been prescribed gabapentin."

8

Tr. 577. But by February 2020, there is no mention of pain and, apart from a self-report of anxiety, his MSE was normal. Tr. 617-22. For the remainder of 2020, his MSEs were largely normal with no complaints of pain, except in August 2020, when he reported that he threw out his back while helping a family member to move. Tr. 708-19. At the last appointment of record in January 2021, his MSE was normal and there are no complaints of pain; the only issue discussed was that caring for his cousin's children so frequently was "starting to get overwhelming." Tr. 750-54.

No treating source has opined that Plaintiff has any physical functional limitations. In connection with this disability application, Plaintiff was examined by a consulting physician (Dr. David Stoll); despite Plaintiff's (inaccurate) report that he had been diagnosed with fibromyalgia, and his claim (not reflected in any treating record) of "constant pain in his shoulders, elbows, hips, knees and ankles," Dr. Stoll opined that his consulting examination "appeared to be unremarkable" with only "mild generalized diffuse tenderness." Tr. 654-57. No functional limitations were noted. The non-examining expert physicians noted Plaintiff's claim of fibromyalgia, his pre-onset complaint of "severe body pain constantly," and his one-time diagnosis by the primary care physician of "chronic pain." Tr. 103, 112. Despite the lack of any diagnosis by any treating source, these experts found fibromyalgia to be a medically determinable impairment, but that it does not cause severe limitations. Tr. 103-04, 113. The non-examining physicians both assessed no physical limitations. Id. The non-examining psychologists found depression and anxiety were established as severe impairments but resulted in the RFC to perform both simple and detailed work with moderate limitations in attention and concentration, in the ability to work in proximity to others and in the ability to complete a workday/week without interruption. Tr. 101-17.

9

The ALJ's decision reflects that he accurately assessed the foregoing record, considering both Plaintiff's minimal treatment but also Plaintiff's subjective complaints of "pain and difficulty with sitting, standing, walking, lifting and carrying." Tr. 18. Despite his well-supported finding that "a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant," Tr. 21, the ALJ nevertheless determined to give "the benefit of the doubt regarding the presence of fibromyalgia symptoms" despite the lack of any diagnosis, and to give "the claimant's allegation of pain some benefit of the doubt, particularly in light of the consultative examiner's finding that the claimant had mild, generalized diffuse tenderness on examination." Tr. 21-22. Based on this determination to credit Plaintiff's subjective complaints beyond what any treating source or consulting/state agency expert suggested would be appropriate, the ALJ found that Plaintiff's RFC limits him to medium work,[5] with a moderate ability to concentrate and maintain pace due to pain. Tr. 19-23. In considering Plaintiff's subjective statements about pain, the ALJ followed the guidance in SSR 16-3p, including that he carefully reviewed Plaintiff's subjective statements in support of his application, which (as noted above) clash with Plaintiff's infrequent subjective complaints of pain to treating sources; Plaintiff's admitted daily activities, including walking and caring for his cousin's children; Plaintiff's minimal treatment for pain (or any other medical impairment), consisting of the trial prescription for gabapentin but no treatment by or referral to any rheumatologist, orthopedist or pain specialist; Plaintiff's normal gait, range of motion, sensation and strength on examination; Plaintiff's largely normal MSEs; Plaintiff's consistent reports to treating providers that his mood

---

[5] To be clear, no medical source – treating or expert – opined to medium exertional limitations.

10

is "ok" and "good"; and the complete absence of any opinion from any medical source endorsing a finding more restrictive (or even as restrictive) as the RFC that the ALJ adopted. Tr. 17-23.

### 2. Analysis of ALJ's Treatment of Subjective Statements

With this background sketched in, I find that the Court need not linger long in considering and rejecting Plaintiff's argument. Far from "overreliance on objective evidence," as Plaintiff charges, ECF No. 11 at 10, this ALJ focused most of his decision on appropriately analyzing Plaintiff's subjective complaints despite the near total lack of objective evidence to support them. And while the ALJ did not fully credit Plaintiff's extreme statements during his testimony (for example, the inability to sit or stand for more than ten minutes, Tr. 47) and in his function report (for example, the inability to walk for more than five to ten minutes, Tr. 247), I find no error in that these statements are directly rebutted by Plaintiff's far less extreme subjective complaints to treating sources,[6] as well as by his daily activities (particularly his babysitting and assisting family members with moving) and by the report of Dr. Stoll, the expert consulting examiner. I find that Plaintiff is simply wrong in arguing that the ALJ required "all of [Plaintiff's] subjective complaints to be supportable by objective evidence." ECF No. 11 at 11.

---

[6] During the period in issue, almost none of Plaintiff's substantive statements on his application about his pain and other limitations are replicated in his complaints to treating sources. To providers at Thundermist, Plaintiff's only complaints of joint pain or chronic pain appear in 2019; that the pain as described was not intense or severely limiting is confirmed by the near complete lack of treatment or follow-up. E.g., Tr. 359 (prescribing trial of gabapentin and suggesting chiropractor but no other follow-up); Tr. 363 (suggesting ice, stretching and NSAIDs but no other follow-up); Tr. 612 (referencing prior complaint of chronic pain, no follow-up). There is no mention of complaints to Thundermist providers of the inability to get out of bed or extreme limitations on walking, sitting and standing. Similarly, to his therapist, Plaintiff reported (inaccurately) that he had been diagnosed with fibromyalgia, Tr. 577, and once reported pain in his heels and back, Tr. 537, but less than two months later reported helping a family member who just moved. Tr. 544 ("Will continue helping cousin out. She has 5 children."). Also once Plaintiff reported that he "threw out his back" while helping a family member who was moving; within three weeks, he told his therapist that the pain had lessened (with no suggestion that he sought treatment) and he was still helping his cousin. Tr. 712, 723. Otherwise, the therapy records routinely reflect Plaintiff's reports of "no new issues or concerns," Tr. 621, "doing well, mood is good," Tr. 629, "doing well overall," Tr. 637, and "in good spirits . . . keeping himself busy," Tr. 691. Far from complaining of being unable to get out of bed or unable to walk or leave the home alone, Plaintiff told his therapist that he "walk[s]" to deal with stress, Tr. 702, and continues to help his cousin and babysit, Tr. 712. See Tr. 687 ("he likes to get out of his house").

Alternatively, I find that Plaintiff's argument also fails because he has not provided the Court with any specific information regarding what are the subjective statements that the ALJ should have credited and how these statement mesh with the other relevant evidence. Thus, if there were error (and I find none), it should be deemed harmless. See Belanger v. Barnhart, No. 06-13-B-W, 2006 WL 3519307, at *2 (D. Me. Dec. 6, 2006) (when plaintiff does not identify testimony about symptoms that would necessarily be inconsistent with ALJ's RFC, failure to discuss plaintiff's subjective testimony about symptoms renders alleged error harmless). More importantly, in light of the dearth of specifics to support Plaintiff's argument (leaving the Court "to sort out [the arguments] on its own"), I find that this argument should be rejected as waived. See Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 n.4 (D.R.I. Sept. 2, 2021) (when claimant presents no argument to support proposition that ALJ's finding is tainted by error, Court cannot speculate what she intended; contention deemed waived), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021); Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) (arguments that are not developed "are clearly throw-in arguments left for the [c]ourt to sort out on its own and, as such, are deemed waived") (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005)), adopted by text order (D.R.I. Aug. 18, 2021). Relatedly, I rely on the settled proposition that, with the burden of proof on the claimant at the RFC phase of the sequential analysis, "the ALJ may disregard subjective claims of pain if they are unsubstantiated and he does not credit them," as long as there is also no evidence establishing that the pain caused limitations. Mills v. Apfel, 244 F.3d 1, 7 (1st Cir. 2001); see Kellilea F. v. Kijakazi, C.A. No. 21-00410-JJM, 2022 WL 2128625, at *8 (D.R.I. June 14, 2022) ("Plaintiff does not point to any opinion finding that she would miss work or be off task in a way that conflicts with the ALJ's RFC finding and would

12

support her burden of proof"); Smith v. Berryhill, 370 F. Supp. 3d 282, 289 (D. Mass. 2019) ("Plaintiff has failed to identify any specific limitation that the ALJ erroneously excluded from the RFC finding. The court is not inclined to do so for her."); Joseph N. v. Berryhill, C.A. No. 17-375 WES, 2018 WL 2722461, at *7 (D.R.I. June 6, 2018) ("While Plaintiff has referenced evidence of sensory loss, he fails to establish how these findings establish greater limitations to his RFC."). As Plaintiff bears the burden of establishing his RFC and he has failed to demonstrate more restrictive limitations than imposed by the ALJ, he has failed to demonstrate any error by the ALJ. See Joseph N., 2018 WL 2722461, at *7.

In closing, citing Carlos N. v. Kijakazi, C.A. No. 20-398-MSM-PAS, 2021 WL 5231949 (D.R.I. Nov. 10, 2021), adopted, 2022 WL 103322 (D.R.I. Jan. 11, 2022), Plaintiff contends that his argument boils down to the proposition that remand is required because "the medical evidence is such that a 'reasonable mind might accept [it] as adequate to support a conclusion' of disability, [in which event,] the ALJ cannot rest on his untutored lay analysis to interpret it otherwise." ECF No. 11 at 14-15 (quoting Carlos N., 2021 WL 5231949, at *8). Despite Plaintiff's failure to direct the Court to any medical evidence that he claims would be supportive of disability, but mindful of this argument, the Court has reviewed the entirety of this record containing more than 750 pages. Based on that review, I find that it does not contain "medical evidence . . . that a 'reasonable mind might accept . . . as adequate to support a conclusion' of disability," as Carlos N. requires. See Carlos N., 2021 WL 5231949, at *8 (quoting Sherry B. v. Saul, 518 F. Supp. 3d 590, 591 (D.R.I. 2021)).

Based on the foregoing, I find no error in the ALJ's compliance with SSR 16-3p and I find no Avery error. I further find that the ALJ's consideration of Plaintiff's subjective

statements is consistent with applicable law and well supported by substantial evidence. Therefore, I recommend that this aspect of his decision be affirmed.

### B. Vocational Expert and Confusion Regarding Unskilled/Semi-Skilled Work

The ALJ called a VE to testify at the hearing. When asked to summarize Plaintiff's prior work, the VE categorized Plaintiff's three prior jobs (truck driver, packager and cashier) by reference to the Dictionary of Occupational Titles ("DOT") including the exertional and skill level applicable to each. Tr. 62. Next, the ALJ presented the VE with several hypothetical RFCs, the first permitting work at all exertional levels and the second limited to medium work. Tr. 63-68. For both of these hypotheticals, the RFC was restricted to unskilled work[7] with limited social contact. Id. In response to the ALJ's inquiry regarding how each hypothetical would affect the ability to perform Plaintiff's prior work, the VE testified that, "[h]e could perform the prior tractor trailer truck driver job." Tr. 66. The ALJ next asked the VE for "jobs in the economy for a person having these limitations in Hypothetical #2." Tr. 66. The VE testified that such an RFC would permit work at four jobs as follows:

- Cleaner, Industrial, medium strength, "SVP 3"[8]
- Laundry work II, medium strength, "SVP 2"
- Marker, light strength, "SVP 2"
- Cleaner/housekeeping, light strength, "SVP 2"

---

[7] The non-examining expert psychologists found that Plaintiff was not significantly limited in his ability to carry out both simple and detailed instructions; they did not find him limited to unskilled work. Tr. 106, 115. No medical source opined to the limitation to unskilled work. Apart from noting Plaintiff's subjective statement that he had difficulty remembering verbal instruction, Tr. 18, the ALJ's decision provides no explanation why he found Plaintiff limited to unskilled work.

[8] "SVP" means "specific vocational preparation." It is a rating scale used to designate the skill level required for specific occupations. SOCIAL SECURITY ADMIN., PROGRAM OPERATIONS MANUAL SYS. (POMS), DI 25001.001A.69, 77, 86, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001. Unskilled work is rated SVP 1 or 2, while semi-skilled work is rated SVP 3 or 4. Id. Skilled work is rated SVP 5 to 9. Id. at 77.

Tr. 67-68. On cross examination, Plaintiff's attorney asked the VE how a person limited to unskilled work would be able to work as a truck driver, which the VE had testified is rated SVP 4. The VE altered his prior answer: "Oh, they would not be." Tr. 69-70. The ALJ jumped in with a comment that might have been the opening of an unfinished question, "And that limitation carries through." Tr. 70. The testimony that follows this comment is set out in full:

> VE:  And that limitation is based on the SVP.
> ALJ:  Right, right. SVP 2 [phonetic].
> VE:  [INAUDIBLE].
> ALJ:  It's that same unskilled limitation was carrying through, though all the hypotheticals. So, essentially there would be no past work the claimant could do in response to any past work?
> VE:  Correct, there Would be no past work. We missed that one.
> ALJ:  Okay. Okay, Counsel. Correction on that.

Id. Following this somewhat confusing exchange, the cross examination continued on other topics.

In his decision, the ALJ inexplicably ignores the exchange with the VE during the attorney's cross examination. He closes the Step Four analysis with the clearly erroneous finding Plaintiff is capable of performing his prior job as a truck driver based on the testimony of the VE "that the claimant is able to perform the job of Tractor Trailer Truck Driver as actually and generally performed." Tr. 23. And while this finding normally would end the analysis, without explanation, the ALJ continued to Step Five. As the decision indicates, "the [ALJ] makes the following alternative findings for step five of the sequential evaluation process," that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform" based on the testimony of the VE that Plaintiff can perform all four of the jobs listed above, resulting in a finding of 'not disabled.'" Tr. 23-24. The ALJ's decision lists the number of jobs for each of the listed occupations but omits the SVP levels to which the VE testified. Tr. 24.

The Commissioner concedes the ALJ's Step Four error but asks the Court to find the error harmless in light of the ALJ's alternative Step Five findings. ECF No. 12 at 3-4. With no authority cited to support its argument, Plaintiff counters that the Court must ignore the "alternative findings" as improper dicta. ECF No. 11 at 8-10. I disagree. Although the First Circuit has not yet specifically addressed the question, the district courts in this Circuit have uniformly held that an ALJ may make alternative findings at Steps Four and Five and, if there is error at Step Four, it is harmless as long as the ALJ's alternative Step Five finding is sustained. E.g., Julie B. v. Soc. Sec. Admin. Comm'r, 2:17-cv-00288-JAW, 2018 WL 4002565, at *4 (D. Me. Aug. 22, 2018), adopted, 2018 WL 5778402 (D. Me. Nov. 2, 2018); Otero v. Colvin, No. 14-cv-206-PB, 2015 WL 5089810, at *7 & n.4 (D.N.H. Aug. 27, 2015); Aharonian v. Astrue, C.A. No. 11-510ML, 2012 WL 3257879, at *8 (D.R.I. July 18, 2012), adopted, 2012 WL 3258225 (D.R.I. Aug. 8, 2012). These decisions are consistent with the only Circuit-level decision to address the issue. See Murrell v. Shalala, 43 F.3d 1388 (10th Cir. 1994). Murrell holds that nothing in the applicable regulations prohibits an ALJ from making alternative findings at subsequent steps that reinforce, rather than overturn, a decision made at a previous step. 43 F.3d at 1389. In short, the law is clear – if the ALJ's "alternative" Step Five findings can be sustained, the Step Four error is harmless and the ALJ's decision should be affirmed.

The problem here is that the ALJ's Step Four error also appears to have tainted the Step Five findings. That is, the ALJ found that the VE testified that the four jobs are "representative unskilled occupations," Tr. 24 (emphasis supplied), which finding clashes with the VE's testimony that one of the four jobs ("cleaner, industrial") requires a skill level of "SVP 3." Tr. 67. Guided by the pertinent POMS, the Court is aware that this rating designates semi-skilled, not unskilled work. SOCIAL SECURITY ADMIN., PROGRAM OPERATIONS MANUAL SYS. (POMS),

DI 25001.001A.69, 77, 86, https://secure.ssa.gov/poms.nsf/lnx/0425001001. Here, because the VE did not consider the skill level incorporated into the hypothetical, she testified wrongly not only about prior relevant work, but also in opining to other available work for Step Five. In categorizing all four jobs as "unskilled" when one of them is clearly not, the ALJ's alternative Step Five finding replicates the same error that he made at Step Four. Tr. 24. Nor does the decision address whether or how "cleaner, industrial," a semi-skilled job, is a job that Plaintiff, limited to unskilled work, could perform.

      To find that this Step Five error is harmless, the Court would have to revise the ALJ's finding of available work by eliminating the "cleaner, industrial" job; subtract the number of "cleaner, industrial" positions from the total and substitute its own finding that the three jobs that remain available have enough positions in the national economy to support a Step Five conclusion of "not disabled." Mindful that, at Step Five, it is the Commissioner who must shoulder the burden of proof, I am troubled by the need to so deeply inject the Court as fact finder into this case. See Cabreja v. Astrue, C.A. No. 11-130-ML, 2012 WL 272746, at *6 (D.R.I. Jan. 27, 2012) (where ALJ's Step Five determination of significant number of jobs was based on number that varied significantly from number presented by VE, and Commissioner's final decision lacks determination whether actual positions are sufficient, court declines "to make a decision which should be remanded to the Commissioner to make that decision in the first place"). Nevertheless, unlike Cabreja, in this case, the ALJ's alternative finding rested not just on the "cleaner, industrial" job, but also on three other unskilled jobs whose cumulative numbers in the national economy are unchallenged as available to Plaintiff and exceeding 300,000

positions.⁹  Tr. 24.  See Thomas P. v. Berryhill, C.A. No. 17-337 WES, 2018 WL 4629249, at *4 (D.R.I. Sept. 27, 2018) (Step Five error is harmless because between 78,000 and 88,000 national jobs remain after job relied on in error is subtracted); Gould v. Colvin, C.A. No. 16-004S, 2017 WL 979026, at *6 (D.R.I. Jan. 25, 2017) (Step Five error is harmless where court can recalculate jobs to support finding of number of available jobs far beyond what courts consider to be significant), adopted sub nom. Gould v. Berryhill, 2017 WL 963185 (D.R.I. Mar. 13, 2017). Importantly, Plaintiff has not attacked this aspect of the ALJ's alternative finding.

Guided by Thomas P. and Gould, I find that the ALJ's Step Five error is harmless because the VE's testimony and the ALJ's unchallenged findings establish that Plaintiff could perform any one of well more than 300,000 available jobs.  That is a number that significantly exceeds what courts routinely affirm as adequate to support a finding that the claimant is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  See Thomas P., 2018 WL 4629249, at *4 n.7 ("over 75,000 jobs is 'significant' under any measure").  Therefore, remand for a Step Five do-over would be an empty exercise.

## IV. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) be DENIED and the Commissioner's Motion for an Order Affirming her Decision (ECF No. 12) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the

---

⁹ The VE supplied, and the ALJ's decision reflects, the numbers needed to perform this calculation: "cleaner, industrial" job has only 17,300 jobs in the national economy, while the other three jobs (two light and one medium exertional level) total 354,250 jobs in the national economy.  Tr. 24.

district judge and the right to appeal the Court's decision.  See <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 4, 2023